AMMEX WAREHOUSE COMPANY, Inc.,
et al., Petitioners,

v.

Hon. Roy C. ARCHER, Chief Justice of the
Austin Court of Civil Appeals, et
al., Respondents.

No. A–10117.

Supreme Court of Texas.

July 29, 1964.

R. Dean Moorhead, Austin, O. C. Hamilton, Jr., McAllen, for relator.

Waggoner Carr, Atty. Gen., Austin, Howard M. Fender and Brady S. Coleman, Asst. Attys. Gen., for respondents.

NORVELL, Justice.

Ammex Warehouse Company and six allied business establishments seek an original writ or writs of mandamus against the Justices of the Court of Civil Appeals in and for the Third Supreme Judicial District of Texas and the Texas Liquor Control Board and its Administrator, Hon. Coke R. Stevenson, Jr.

### History of Litigation

Relators sell whiskey and other liquors under a scheme or plan which they contend is exempt from state regulation because of Acts of Congress passed under the commerce clause of the United States Constitution. Their establishments are located near the Mexican border and they claim that their operations are in essence the same as those carried on by Idlewild Bon Voyage Liquor Corporation which were recently considered by the Supreme Court of the United States in Hostetter v. Idlewild Bon Voyage Liquor Corporation, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). The Administrator of the Texas Liquor Control Board asserts that the operations of relators were and are being conducted within the territorial boundaries of Texas and are subject to state control and regulation.

The District Court consolidated a number of cases in which the relators were plaintiffs and the Texas Liquor Control Board and its Administrator were defendants under Cause No. 132,400 on the docket of said Court. On March 6, 1964, the Court rendered two orders; one being a decree permanently enjoining the Texas Liquor Control Board and its Administrator from enforcing or attempting to enforce the state regulatory liquor laws as against the defendants and their operations; the second was styled, "Order modifying and extending temporary injunction." It is accurately stated by the Court of Civil Appeals in the prohibition proceedings hereinafter mentioned that it appears without dispute that:

"Comparison of the final judgment with the so-called order modifying and extending temporary injunction reveals that the restraining provisions are substantially identical in each instrument, the major difference being that by the final judgment Defendants are 'permanently enjoined,' while the * * * extension of the temporary injunction purports to restrain and enjoin Defendants 'pending final determination of this consolidated cause on the merits by the highest appellate court to which the judgment on the merits may be appealed by any of the parties.'" Texas Liquor Control Board v. Jones, District Judge, Tex.Civ. App., 378 S.W.2d 898, l.c. 900, original proceeding (1964).

The temporary order also expressly provided that:

"This order shall not merge with any injunctive relief which might be granted by the Court in the judgment which will hereinafter be entered upon the merits of this cause, but shall at all times, until final determination of this case by the Court of last resort, remain separate and apart therefrom."

As there seems to be a substantial federal question here involved, it is readily seen that the purpose of the temporary order was to prevent supersedeas and restrain

enforcement of the state regulatory liquor laws until this litigation could make its way through the Court of Civil Appeals to this Court and ultimately to the Supreme Court of the United States.

The Court of Civil Appeals considered this temporary order to be an interference with its jurisdiction of the case which had been invoked by giving notice of appeal from the final judgment rendered in said consolidated Cause No. 132,400. Accordingly, upon application of the Administrator, it issued a writ of prohibition forbidding the enforcement of the temporary injunction or stay order issued by the District Court. Texas Liquor Control Board v. Jones, District Judge, supra. In so doing the Court relied primarily upon its prior decision rendered in Railroad Commission of Texas v. Roberts, Tex.Civ.App., 332 S. W.2d 745, original proceeding. (1960), wherein it was said that:

"[W]e are convinced that the effect of the temporary restraining order issued on February 8, 1960 was to deny to the Railroad Commission its rights accorded it by the statutes of this State to supersede the judgment of February 3rd and that such rights are the proper subject of protection by this Court as ancillary to the appeal from the final judgment of February 3, 1960, and that under Article 1823 which authorizes this Court to issue writs necessary to

protect its jurisdiction that the writ of prohibition for which the relator prays should be awarded."

This Court granted leave to file an application for writ of mandamus presented by relators and issued a temporary order staying all action on the part of the Texas Liquor Control Board and its Administrator until we could determine this cause. See, State ex rel. Yelkin v. Hand, 160 Tex. 414, 333 S.W.2d 108(1960) and Hand v. State, 160 Tex. 415, 333 S.W.2d 109 (1960). The relief prayed for by way of mandamus in this Court would have the effect of rendering the temporary injunction or stay order of the District Court effective until this cause had been determined by the court of last resort which, as above pointed out, could well be the Supreme Court of the United States.

*The Right of the State to Supersedeas*

It is asserted by the relators that Article 279a [1] and 2276 [2] do not authorize the State to supersede a judgment of a trial court. It is said that to construe such articles as allowing a supersedeas by the State without giving a bond would render the statutes unconstitutional under the due process clauses of the state and federal constitutions. It is also pointed out that certain articles of the Revised Statutes relating to the right of a governmental entity or department to appeal without giving bond specifically mention "supersedeas bonds" as

1. Article 279a reads as follows:
   "Neither the State of Texas, nor any county, nor any state department, nor the head of any state department, nor the Federal Housing Administration, nor any National Mortgage Association, nor any National Mortgage Savings and Loan Insurance Corporation created and/or to be created by or under authority of any Act of the Congress of the United States of America as a National Relief Organization operating territorially on a state-wide basis, nor the Veterans Administration, nor the Administration of Veterans Affairs, shall be required to give any bond incident to any suit filed by any such agency, official, and/or entity, for costs of court or for any appeal or writ of error taken out by it

   or either of them, nor any surety for the issuance of any bond for the taking out of writs of attachments, sequestration, distress warrants, or writs of garnishment in any civil suit. Provided that no county or district attorney shall be exempted from the filing of bonds in the taking out of an extraordinary writ, unless said county or district attorney shall first obtain the approval by proper order of the Commissioners Court of the county in behalf of which such action is taken or the approval of the Attorney General in actions brought in behalf of the State."

2. Article references are to Vernon's Ann. Tex.Stats.

well as cost bonds. See Article 1174 relating to cities and Article 2072a relating to the Banking Department.

Article 2276 reads as follows:

"Neither the State of Texas, nor any county in the State of Texas, nor the Railroad Commission of Texas, nor the head of any department of the State of Texas, prosecuting or defending in any action in their official capacity, shall be required to give bond on any appeal or writ of error taken by it, or either of them, in any civil case.

"Executors, administrators and guardians appointed by the courts of this State shall not be required to give bond on any appeal or writ of error taken by them in their fiduciary capacity."

In Railroad Commission of Texas v. Roberts, supra, it was held that:

"The effect of notice of appeal by and on behalf of the Railroad Commission was to supersede the final judgment entered by the 126th District Court."

In Inman v. Texas Land & Mortgage Company, Tex.Civ.App., 74 S.W.2d 124, no wr. hist. (1934) the Court stated that:

"Rev.St. Art. 2276, provides that a guardian appointed by the courts of this state shall not be required to give bond on any appeal or writ of error taken by him in his fiduciary capacity. It is further held that, when a guardian, as such, has appealed by giving the required notices and filing the record in the reviewing court, the appeal suspends the execution of the judgment or order appealed from without the necessity of filing a supersedeas bond. 21 Tex.Jur. 368, § 106, 370, § 107, and authorities cited."

Similarly in Wallace v. Adams, Tex.Civ. App., 243 S.W. 572, wr. dis., 1922, it was said that:

"The state may appeal without bond, so may guardians and administrators;

yet the judgments from which such appeals are prosecuted are automatically suspended without any specific statutory directions that such shall be the result."

While these decisions by the Courts of Civil Appeals are not binding upon this Court, the holdings made by such Courts are in accord with the plain unequivocal wording of the statutes and the Rules of Civil Procedure relating to supersedeas. Rule 364 makes only one requirement as a prerequisite for a supersedeas and that is the filing of a bond. It is stated that, "An appellant desiring to suspend the execution of the judgment may do so by giving a good and sufficient bond. * * *". The statute provides that the State shall not be required "to give bond on any appeal or writ of error taken by it * * * in any civil case."

We see nothing in this exemption statute which is repugnant to any constitutional provision. The Legislature could have provided that any judgment of a trial court should remain in effect until final disposition of the cause by an appellate court of last resort. It did not so provide, but on the contrary prescribed that a final judgment of a trial court could be suspended by supersedeas.

It is true that if the Texas law is enforced as to relators and it should thereafter be determined that the federal law had exclusive application, such relators could not recover damages or indemnity against the State. The State by the very nature of its political organization cannot give bond nor expend money without Legislative approbation, but this circumstance does not operate to deprive the State of the right of supersedeas. No one would seriously question the right of the State of Texas to regulate the manufacture and sale of intoxicants within its borders. Such regulations may at times entail hardship. Administrators may make mistakes, but hardships and mistakes are incidental to each and every law enforcement effort

by human beings. The Legislature was well within its constitutional boundaries in providing that the State and the heads of its departments are exempt from giving bond when they elect to supersede a judgment of a trial court.

*The Asserted Immunity of the Trial Court's Temporary Injunction or Stay Order from Control by the Court of Civil Appeals*

■ When the State's right to supersedeas is recognized, there can be little doubt as to the *power* of the Court of Civil Appeals to forbid enforcement of the trial court's temporary order when an appeal has been perfected to the appellate court from a final judgment. As above pointed out the temporary order is in substantially the same terms as the perpetual injunction. It is based upon no independent equity. The same considerations that support the perpetual injunction likewise support the temporary order. The purpose of the temporary order was to prevent a supersedeas of the perpetual injunction. It would operate to restrain the Administrator from attempting to enforce the state's regulatory liquor control laws as to relators until final disposition of this cause by the Court of last resort. It may be that litigants' substantive rights would be better protected by allowing enforcement of a trial court's judgment pending appeal. Decisions of trial judges are usually free from error. It is arguable that in the greater number of cases the ends of justice would be better served by making their judgments fully effective until they are reversed or set aside. Perhaps it would follow that supersedeas should not be allowed at all, or that it should be allowed only at the trial court's discretion, or that it should be allowed only when the party ultimately prevailing would have some redress by recourse against an indemnity bond. However, when and how supersedeas should be allowed is a policy question peculiarly within the legislative sphere and the Legislature has determined that the State and certain political subdivi-

sions thereof may supersede judgments of trial courts.

In Yett v. Cook, 115 Tex. 175, 268 S.W. 715 (1925) this Court considered a temporary injunction having for its purpose the enforcing of a writ of mandamus which had been superseded pending appeal. The temporary order was characterized as being "absolutely void." This Court said that:

"[T]he injunction was applied for for the purpose of rendering ineffective the appeal and supersedeas which might be taken as against the judgment awarding the peremptory mandamus, and its purpose and effect was simply an attempt to nullify the rights of the relators granted them by the statute permitting them to supersede the mandamus judgment."

■■ It is a rule of general application that when an appeal is perfected to the Court of Civil Appeals, the latter Court (subject to the right of the trial court to grant a motion for new trial in term time, Bergman v. West, Tex.Civ.App., 262 S.W. 2d 435, no wr. hist., 1953; Cude v. Sanderson, Tex.Civ.App., 235 S.W.2d 927, no wr. hist., 1951, and absent statutory exception), acquires plenary exclusive jurisdiction over the entire controversy. Thompson v. Kelley, 100 Tex. 536, 101 S.W. 1074 (1907); Whaley Farm Corporation v. Bieloh, Tex.Civ.App., 9 S.W.2d 273, original proceeding (1928), 3 Tex.Jur.2d 598, Appeal and Error—Civil Cases § 340. Similarly, when an application for writ of error is filed in this Court, our jurisdiction, which is likewise exclusive in nature, attaches to the cause. Johnson v. Sovereign Camp, W.O.W., 125 Tex. 329, 83 S.W.2d 605 (1935).

■ After an appeal is perfected from a final appealable judgment, the Court of Civil Appeals is expressly authorized to issue writs of mandamus and all other writs necessary to enforce its jurisdiction. Article 5, § 6, Constitution of Texas, Vernon's

Ann.St., Article 1823, Appellate Procedure in Texas, § 1–1. The writ of prohibition has been issued by the Court of Civil Appeals to protect its jurisdiction, and, in our opinion, this Court is not authorized to exercise its original jurisdiction to disturb the prohibition order.[3]

In McDowell, District Judge v. Hightower, Chief Justice et al., 111 Tex. 585, 242 S.W. 753 (1922), it appeared that McDowell, as judge of the 60th District Court, had removed T. H. Garner from the office of Sheriff of Jefferson County. Garner appealed to the Court of Civil Appeals for the Ninth Supreme Judicial District and gave a supersedeas bond. The Court of Civil Appeals on application of Garner issued an injunction against Judge McDowell restraining him from interfering with Garner's discharge of his duties as sheriff of Jefferson County. Judge McDowell then sought a mandamus from this Court ordering the Court of Civil Appeals to vacate its order above mentioned. In denying the application for mandamus this Court said:

> "Any action in disregard of a supersedeas is contempt of the jurisdiction of the court in which an appeal, with supersedeas, is pending. 3 C.J. 1327. It is doing no more than protecting its own jurisdiction for the court to inquire into and prevent such acts as would be in defiance of the effect of the supersedeas.

> "It cannot, therefore, be doubted that the Beaumont Court of Civil Appeals was authorized to consider and determine the right of Garner to continue in office during the pendency of his appeal, and to protect and enforce that right, if affirmed, in the exercise

of the court's power, under article 1592 (now article 1823) of Vernon's Sayles' Texas Civil Statutes, to issue all writs necessary to enforce its jurisdiction. Having jurisdiction to hear and determine the application of Garner for the enforcement of his asserted right, in and to the subject-matter of the removal suit, pending the appeal, the action of the Court of Civil Appeals was not void, regardless of the correctness of the court's construction of the statutes relating to a sheriff's suspension or removal from office and relating to appeals.

> "The conclusion that the order of the Court of Civil Appeals cannot be successfully attacked as a nullity precludes the award of any relief to relators in this proceeding. This court is bound by the law as is each and every citizen. The law's behests must be obeyed, if civilized government is to endure. The court has no original jurisdiction to issue writs of mandamus save such as has been conferred by the Legislature. The Legislature in its grant to the court of original jurisdiction in mandamus cases has expressly provided that in its exercise the writ of mandamus shall issue against any district judge, or Court of Civil Appeals, or judge of a Court of Civil Appeals, or officer of the state government except the Governor, only in accordance with the principles of law regulating such writ. There is no principle of law regulating the issuance of a writ of mandamus longer or better established in this state than that mandamus never lies to control official discretion or to correct mere errors in the exercise of judicial power."

---

3. It is the relators' contention that this Court is empowered to act by reason of the provisions of Article 1733 which reads as follows:

   "The Supreme Court or any Justice thereof, shall have power to issue writs of procedendo, certiorari and all writs

of quo warranto or mandamus agreeable to the principles of law regulating such writs, against any district judge, or Court of Civil Appeals or judges thereof, or any officer of the State Government, except the Governor."

*The Duty of the Court of Civil Appeals
to Exercise its Original Jurisdiction to
Prevent a Destruction of the Subject
Matter of the Litigation*

In City of Dallas v. Dixon, Chief Justice et al., Tex.Sup., 365 S.W.2d 919 (1963) [4] this Court held that where the duty was mandatory as distinguished from discretionary and the Court of Civil Appeals had failed to exercise the power vested in it under the provisions of Article 1823, this Court could and would issue a mandamus under Article 1733 directing the Court of Civil Appeals to take action to protect its jurisdiction. As an alternative contention, the relators say that the failure of the Court of Civil Appeals to act and stay the hand of the Administrator will result in a destruction of the subject matter of this litigation so as to render such judgment as may be rendered by the Court of Civil Appeals wholly inoperative and ineffective; that the Court of Civil Appeals should have acted to protect its jurisdiction, and that under authority of the Dixon case, this Court should compel action.

We have been cited to no case by this Court in which the issuance of the suggested species of stay order in the teeth of the statute authorizing a supersedeas has been sustained. Whether such a writ could issue in a proper case we need not now determine. It seems that the subject matter of this litigation is the asserted right of relators to operate their business free of state regulation. Relators, however, insist that their business, as heretofore operated by them free of state control, will be destroyed. While the business of relators may be damaged or, as they say, need to be reconstructed after the pending litigation is terminated in their favor (if such be the final result), it is difficult to see that this would destroy the subject matter of the litigation, namely, the asserted right to do business free of state regulation. How-

ever that may be, the Administrator has filed a sworn reply herein stating in substance that relators' physical properties will not be destroyed. Should they be required for a while to operate in accordance with state law, the subject matter of the litigation would not be destroyed. At most, a fact issue is raised which this Court cannot decide and we cannot say that the Court of Civil Appeals is under a mandatory duty to issue the writ as asserted by relators. Teat v. McGaughey, 85 Tex. 478, 22 S.W. 302 (1893).

*Conclusion*

It is not our intention to pass upon the merits of the State's appeal now pending in the Court of Civil Appeals and which is potentially subject to our writ of error jurisdiction. Further, it may be said that an original proceeding in this Court is in no sense an appellate review of action taken by the Court of Civil Appeals. This Court has no appellate jurisdiction over proceedings originating in the Court of Civil Appeals. In Texas Liquor Control Board v. Jones, Tex.Civ.App., 378 S.W.2d 898, supra, the Court stated that the holding in City of Athens v. Gulf States Telephone Company, Tex.Civ.App., 374 S.W.2d 757, original proceeding (1964) is inconsistent with the rule followed in Railroad Commission of Texas v. Roberts, Tex.Civ. App., 332 S.W.2d 745, supra. After the actions taken by the Courts of Civil Appeals in both the Athens and Roberts cases, motions for leave to file applications seeking to invoke an original jurisdiction were overruled by this Court. See Rule 474. Our original jurisdiction, under the constitution and statutes is not primarily designed to settle conflicts between or among decisions of the Courts of Civil Appeals and hence our refusing to issue original writs following Court of Civil Appeals action in such cases is not to be taken as approving or condemning such action. However, we

4. Reversed on the issue of the authority of a state court to enjoin parties from litigating in the federal courts, Donovan

v. Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 1579.

approve the holdings of Railroad Commission v. Roberts upon the points indicated by the citations thereto contained in this opinion.

 Of course, in the exercise of our original jurisdiction, we may, under certain circumstances, not present here, order a Court of Civil Appeals to act, or restrain a Court of Civil Appeals from interfering with an order of this Court issued in the exercise of its original jurisdiction. City of Dallas v. Dixon, Chief Justice et al., Tex.Sup., 365 S.W.2d 919, supra; Johnson v. Court of Civil Appeals, 162 Tex. 613, 350 S.W.2d 330 (1961); Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063 (1926); Gulf, Colorado & Santa Fe Ry. Co. v. Muse, 109 Tex. 352, 207 S.W. 897, 4 A.L.R. 613 (1919), Appellate Procedure in Texas, Mandamus, § 1.4.

Accordingly, as to this case, we conclude that:

(1) The State has a valid statutory right to a supersedeas without filing a bond upon perfecting its appeal by giving proper notice. Unless a contrary intention is made known to the Court, the State's notice of appeal operates as a supersedeas.

(2) As the restraints of the temporary order are in substance the same as those of the perpetual decree, there exists no "independent equity" upon which the temporary order may be based. Article 4642, § 2 has no application to this case. Yett v. Cook, 115 Tex. 175, l.c. 183, 268 S.W. 715, l.c. 718 (1925).

(3) The perpetual decree entered by the trial court is subject to supersedeas. Railroad Commission of Texas v. Roberts, District Judge, Tex.Civ.App., 332 S.W.2d 745, original proceeding (1960); Kimbrough v. State, Tex.Civ.App., 139 S.W.2d 165, original proceeding (1940); Ross v. State ex rel. Shook, Tex.Civ.App., 97 S.W.2d 505, original proceeding (1936).

(4) The Court of Civil Appeals was vested with jurisdiction and authority to issue its writ of prohibition to protect the State's right to supersedeas. McDowell v. Hightower, 111 Tex. 585, 242 S.W. 753 (1922).

(5) The Court of Civil Appeals, on the record before us, was not under a mandatory duty to issue an injunctive writ to protect the subject matter of the litigation. City of Dallas v. Dixon, Chief Justice et al., Tex.Sup., 365 S.W.2d 919, supra; Teat v. McGaughey, 85 Tex. 478, 22 S.W. 302, supra.

The application for writ of mandamus and all ancillary relief is denied. The stay order heretofore issued by us is vacated. No motion for rehearing will be entertained.

HAMILTON, J., dissented.