# IN THE SUPREME COURT OF TEXAS

No. 20-0404

In Re The Texas Education Agency; Mike Morath, Commissioner Of Education In His Official Capacity; And Doris Delaney, In Her Official Capacity, Relators

On Petition for Writ of Mandamus

**Argued October 27, 2020**

Justice Guzman delivered the opinion of the Court, in which Justice Lehrmann, Justice Boyd, Justice Devine, Justice Blacklock, Justice Busby, Justice Bland, and Justice Huddle joined.

Chief Justice Hecht filed a dissenting opinion.

When a state agency or department head files a notice of appeal, enforcement of an adverse judgment or order is automatically suspended without bond or other security.[1] Section 22.004(i) of the Texas Government Code provides that this supersedeas right "is not subject to being counter-superseded" under Texas Rule of Appellate Procedure 24.2(a)(3) "or any other rule" except in "a matter that was the basis of a contested case in an administrative enforcement action."[2] In this ultra vires dispute, state regulators appealed an adverse temporary injunction, but the trial

---

[1] Tex. R. App. P. 24.2(a)(3); *see* Tex. Civ. Prac. & Rem. Code § 6.001(b)(1)-(3).

[2] Tex. Gov't Code § 22.004(i); *see* Tex. R. App. P. 24.2(a)(3).

court allowed the plaintiff school district to counter-supersede the injunction so the regulators could not undertake any unauthorized actions absent success on appeal.

The court of appeals reversed the counter-supersedeas order as contrary to Rule 24.2(a)(3) and Section 22.004(i).[3] But to preserve the status quo and prevent irreparable harm, the court issued its own temporary order continuing the injunction pending disposition of the appeal.[4] The purely procedural question presented in this mandamus proceeding is whether the appellate court's temporary order conflicts with Section 22.004(i). We hold it does not and therefore deny mandamus relief. Section 22.004(i)'s prohibition against counter-supersedeas is textually limited to the supersedeas context and does not purport to constrain an appellate court's power to issue temporary orders under other authority. The court of appeals' temporary order may have the same practical effect as denying supersedeas of the trial court's injunction, but it is not counter-supersedeas relief within the meaning of the statute.

## I. Background

In the underlying suit, the Houston Independent School District (HISD) seeks a declaration that the Texas Education Agency (TEA), Commissioner Mike Morath, and Dr. Doris Delaney (collectively, Relators) lack authority to assume control of the entire school district to rectify performance deficiencies at 1 of the district's 280 schools and to address concerns about open-government compliance and discord among HISD's publicly elected board of trustees. Among the actions HISD challenges are Commissioner Morath's decision to (1) install Dr. Delaney as a district-level conservator, (2) replace HISD's elected trustees with an appointed

---

[3] 609 S.W.3d 569, 575 (Tex. App.—Austin 2020) (per curiam).

[4] *Id.* at 578 (citing inherent authority and TEX. R. APP. P. 29.3).

2

board of managers, and (3) lower HISD's accreditation status. HISD contends these actions would be ultra vires and, on that basis, seeks injunctive relief barring their implementation.

After a hearing, the trial court temporarily enjoined the proposed actions, finding (1) HISD established a probable right to recovery on its claim that the challenged actions are without legal authority and ultra vires, (2) HISD made a sufficient showing that the alleged ultra vires actions would irreparably harm HISD, and (3) injunctive relief is necessary to maintain the status quo pending a final judgment. The trial court set a prompt trial date on HISD's request for permanent injunctive relief and denied supersedeas on interlocutory appeal. In allowing HISD to counter-supersede the interlocutory order if the Relators appealed, the court stated that unless the temporary injunction remained in force on appeal, Commissioner Morath would be free to engage in ultra vires conduct that, once undertaken, would constitute final, unappealable administrative action.[5]

After perfecting an interlocutory appeal, Relators filed a motion to vacate the trial court's counter-supersedeas order, citing Texas Rule of Appellate Procedure 24.2(a)(3).[6] Relators argued that their notice of appeal automatically superseded the trial court's temporary injunction and, under Rule 24.2(a)(3), trial courts have no discretion to deny supersedeas to a state agency or the head of a state agency. HISD opposed Relators' motion to vacate the counter-supersedeas order and, in the alternative, filed a cross-motion urging the court of appeals to exercise its authority under Texas Rule of Appellate Procedure 29.3 to "make any temporary orders necessary to

---

[5] *See Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407, 413-14 (Tex. 2016) (Hecht, C.J., plurality op.) (finality provisions precluded judicial review of Commissioner of Education's actions even if ultra vires); *id.* at 414 (Brown, J., concurring) (same).

[6] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4); TEX. R. APP. P. 28.1.

preserve the parties' rights until disposition of the appeal."[7] HISD argued that temporary relief was necessary to protect the parties' rights during the appeals process and to prevent Commissioner Morath from taking a final and unappealable administrative act that would divest the court of jurisdiction to reach the merits.

The court of appeals granted Relators' motion and vacated the portion of the trial court's order granting HISD's counter-supersedeas request. The court agreed with Relators that the trial court's denial of supersedeas violated Rule 24.2(a)(3).[8] However, to preserve the status quo, to prevent HISD from suffering irreparable harm, and to protect its jurisdiction to decide the appeal on the merits, the court also granted HISD's cross-motion and ordered that the trial court's temporary injunction would remain in effect pending disposition of the interlocutory appeal.[9] The court explained that,

> under the particular circumstances presented here, where the appellee alleges irreparable harm from ultra vires action that it seeks to preclude from becoming final, to effectively perform our judicial function and to preserve the separation of powers, we must exercise our inherent authority and use Rule 29.3 to make orders "to prevent irreparable harm to parties that have properly invoked [our] jurisdiction in an interlocutory appeal."[10]

The court emphasized, "We are not allowing the trial court to counter-supersede the temporary injunction; we are exercising our power to issue temporary orders."[11]

---

[7] TEX. R. APP. P. 29.3.

[8] 609 S.W.3d at 575.

[9] *Id*. at 578.

[10] *Id.* (quoting *In re Geomet Recycling LLC*, 578 S.W.3d 82, 90 (Tex. 2019) (orig. proceeding)) (alteration in original).

[11] *Id.*

4

The court of appeals has since ruled on the merits of the temporary injunction, affirming the trial court in a split decision.[12] But prior to disposition of the interlocutory appeal, Relators filed this original proceeding seeking to vacate the appellate court's order temporarily continuing the injunction. The validity of the court of appeals' temporary order remains live and mandamus relief remains effective because the court has not lifted its temporary order.

## II. Discussion

This original proceeding presents our first opportunity to consider the meaning and reach of Section 22.004(i) of the Government Code, which prohibits this Court from adopting procedural rules authorizing counter-supersedeas of orders and judgments against certain governmental defendants except as to a narrow class of administrative cases.[13] Relators contend Section 22.004(i) creates a right to supersedeas that is substantive, absolute, and unavoidable. HISD argues to the contrary, finding support for interim appellate relief in Texas Rule of Appellate Procedure 29.3, Texas Government Code provisions authorizing courts to protect their jurisdiction, and the judiciary's inherent authority. HISD further urges that the statutory scheme and the rules of appellate procedure cannot be construed as neutering judicial power in the way Relators suggest without violating the separation-of-powers doctrine established in Article II, Section 1 of the Texas Constitution.

We hold that the court of appeals' temporary order does not conflict with Section 22.004(i)'s limitation on procedural rules authorizing counter-supersedeas. The

---

[12] *Tex. Educ. Agency v. Hou. Indep. Sch. Dist.*, No. 03-20-00025, 2020 WL 7757365, at *1 (Tex. App.—Austin Dec. 30, 2020, pet. filed) (mem. op.); *id.* at *9 (Baker, J., dissenting). The appeal in the ultra vires action has been docketed in this Court as Cause No. 21-0194, which remains pending.

[13] *See* TEX. GOV'T CODE § 22.004(i) (prohibiting counter-supersedeas as to certain state parties under Rule 24.2(a)(3) or "any other rule").

5

temporary order is not counter-supersedeas relief within the meaning of the statute even though the order may have the same effect. "Supersedeas" is a trial-court process for suspending enforcement of the judgment. Under the rules of appellate procedure, supersedeas is subject to review by the appellate courts, but the supersedeas process occurs in the trial court.[14] Section 22.004(i) does not purport to limit the power of appellate courts, including this Court, to issue temporary orders under other authority, like the Rule 29.3 order issued here.

It is not uncommon for procedurally different processes to produce the same substantive effect. That is the case here where an injunctive effect may be achieved in multiple ways, but Section 22.004(i) uses precise and technical language to prohibit only one of those procedural mechanisms. We cannot presume the Legislature intended Section 22.004(i) to carry broader preclusive force than the enacted language describes. Rather, "[w]e must take the Legislature at its word, respect its policy choices, and resist revising a statute under the guise of interpreting it."[15] Judicial restraint in this regard is all the more important if expanding a statute's reach has the potential to impermissibly encroach on the judiciary's constitutionally separate domain.

## A.

The purpose of supersedeas is "to preserve the status quo by staying the execution or enforcement of the judgment or order appealed from pending the appeal."[16] Supersedeas not only prevents a judgment creditor from levying execution on a judgment while an appeal is pending[17]

---

[14] *See* TEX. R. APP. P. 24.1–.4 (subject to review by the court of appeals and further review by mandamus to the Supreme Court of Texas, the trial court determines the type and amount of security required to suspend enforcement of a judgment and that court's clerk issues the writs of supersedeas that halt enforcement).

[15] *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013).

[16] *Shell Petroleum Corp. v. Grays*, 62 S.W.2d 113, 118 (Tex. 1933).

[17] *Supersedeas*, BLACK'S LAW DICTIONARY (11th ed. 2019).

but also prevents a judgment, injunction, or other order from being enforced by contempt.[18] When superseded, compliance with an injunction is not required until all appeals have been exhausted and the mandate has issued.[19]

Merely appealing an interlocutory order does not suspend enforcement "unless . . . the appellant is entitled to supersede the order without security by filing a notice of appeal."[20] TEA and Commissioner Morath fall within the stated exception because Section 6.001 of the Texas Civil Practice and Remedies Code exempts a department of the State of Texas and the head of such department from filing "a bond . . . for an appeal . . . in a civil suit."[21] Accordingly, the notice of appeal automatically suspended enforcement of the trial court's order.[22] Instead of preserving the status quo, however, suspension of the temporary injunction would, in this case, have the contradictory effect of permitting the status quo to be altered, because if compliance with the injunction were not required, HISD's manner of governance and accreditation rating could be changed from "the last, actual, peaceable non-contested status [that] preceded the pending controversy."[23]

---

[18] *See, e.g.*, *In re Long*, 984 S.W.2d 623, 626 (Tex. 1999) (orig. proceeding) (a superseded injunction is not enforceable by contempt until all appeals related to the judgment have been exhausted; options to allow enforceability pending disposition of an appeal include a request to deny supersedeas); *In re Sheshtawy*, 154 S.W.3d 114, 123-24 (Tex. 2004) (orig. proceeding) (examining cases involving the authority of the courts to enforce by contempt temporary injunctions or final judgments that have been appealed but not superseded).

[19] *In re Long*, 984 S.W.2d at 626; *see* TEX. R. APP. P. 24.1(f) ("Enforcement of a judgment must be suspended if the judgment is superseded.").

[20] TEX. R. APP. P. 29.1.

[21] As the court of appeals observed, the temporary injunction effectively includes the TEA by enjoining Commissioner Morath and "his agents, servants, representatives, employees, designees, and officials acting in concert with him." 609 S.W.3d 569, 573 n.2 (Tex. App.—Austin 2020) (per curiam).

[22] *See In re State Bd. for Educator Certification*, 452 S.W.3d 802, 804 (Tex. 2014) (orig. proceeding); *Ammex Warehouse Co. v. Archer*, 381 S.W.2d 478, 485 (Tex. 1964).

[23] *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016) (quoting *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962)).

For reasons like this, the extent to which the state's "automatic" right to supersedeas is also "absolute" has been the subject of much debate centered on the text of Texas Rule of Appellate Procedure 24.2(a)(3), which governs suspension of orders "for something other than money or an interest in property."[24] In a former iteration of the rule, trial courts generally had discretion to deny supersedeas if the judgment creditor filed a counter-supersedeas bond, but it was unclear whether the discretion to deny supersedeas extended to orders and judgments against governmental defendants the Legislature has exempted from filing an appeal bond.[25] We settled the issue in *In re State Board for Educator Certification* by holding that the former version of Rule 24.2(a)(3) gave trial courts discretion "to decline supersedeas if the judgment creditor posts security."[26]

In that case, the State Board for Educator Certification revoked a schoolteacher's teaching certificate after a contested-case hearing, but in a subsequent judicial-review proceeding, the trial court reversed the revocation and refused to allow the board to supersede the judgment pending appeal. Construing the language in Rule 24.2(a)(3) as it existed at the time, we said:

> TRAP 24.2(a)(3) gives the trial court discretion, quite sensibly, to prevent the State from re-revoking Montalvo's certification—the ultimate professional sanction—while it spends years appealing the court's reversal of the State's first revocation, something the trial court found "arbitrary and capricious." The State—as yet unsupported by a victory on the merits in any court—wants to strip Montalvo of his livelihood while the appellate process grinds on, and if he manages to regain his professional license after having been kicked out of his profession for years—well, bygones. [Enforcing administrative orders a trial court has reversed would be] a striking assertion of unbridled executive power [and] TRAP 24.2(a)(3) recognizes the judiciary's authority to say no.[27]

---

[24] *See* TEX. R. APP. P. 24.2(a)(3), 29.1–.2.

[25] *State Bd. for Educator Certification*, 452 S.W.3d at 806 n.22.

[26] *Id.* at 808.

[27] *Id.* at 808-09.

8

A few years later, the Texas Legislature instructed this Court to adopt rules curbing judicial discretion to issue "counter-supersedeas" orders. Adopting Section 22.004(i) of the Texas Government Code, the Legislature required the Court to adopt rules ensuring that the right of select governmental entities "to supersede a judgment or order on appeal [without bond] is not subject to being counter-superseded under Rule 24.2(a)(3), Texas Rules of Appellate Procedure, or any other rule."[28] Under Section 22.004(i), the only permissible exclusion to the general prohibition is for "[c]ounter-supersedeas . . . in a lawsuit concerning a matter that was the basis of a contested case in an administrative enforcement action." [29] This exception encompasses the situation that existed in *In re State Board for Educator Certification*, so our holding that the trial court had discretion to grant counter-supersedeas relief in that case remains intact.

Responding to Section 22.004(i)'s directive, we amended Rule 24.2(a)(3) to its current form, which deprives trial courts of authority to deny supersedeas for non-monetary, non-property-interest judgments "[w]hen the judgment debtor is the state, a department of this state, or the head of a department of this state."[30] As to those governmental actors, "the trial court *must* permit a judgment to be superseded except in a matter arising from a contested case in an administrative enforcement action."[31] Notably, we did not view Texas Rule of Appellate Procedure 29 as involving the supersedeas or counter-supersedeas process and thus made no changes to that rule in response to Section 22.004(i)'s directive.

---

[28] TEX. GOV'T CODE § 22.004(i). Section 6.001 lists several governmental entities and actors who are exempt from filing an appeal bond, but the Legislature immunized only a limited few from counter-supersedeas: (1) this state; (2) a department of this state; and (3) the head of a department of this state. TEX. CIV. PRAC. & REM. CODE § 6.001(b)(1)-(3).

[29] TEX. GOV'T CODE § 22.004(i).

[30] TEX. R. APP. P. 24.2(a)(3).

[31] *Id.* (emphasis added).

**B.**

The dispute here is whether the legislatively mandated prohibition on counter-supersedeas grants Relators a substantive right to supersedeas that constrains courts of appeals from effectively granting the same relief under Texas Rule of Appellate Procedure 29.3 or otherwise. Relying on Government Code Section 22.004(i) and the conforming revision to Rule 24.2(a)(3), Relators claim an unequivocal and unconditional supersedeas right that cannot, under any circumstances, be denied through counter-supersedeas or any equivalent action. Relators contend that the court of appeals' temporary order directly conflicts with Section 22.004(i) because the statute explicitly prohibits denial of supersedeas under *any* procedural rule, not just counter-supersedeas orders issued by the trial court. And because a rule of procedure can never take precedence over a statute—especially a statute that expressly disallows incompatible rules—Relators take exception to the court of appeals' reliance on its authority under Rule 29.3 to issue temporary orders.

HISD's central argument to the contrary is that neither Section 22.004(i) nor Rule 24.2(a)(3) circumscribes an appellate court's authority to issue temporary orders under (1) statutory grants of authority to preserve jurisdiction,[32] (2) the court's inherent authority to protect the status quo and preserve the parties' rights,[33] or (3) Rule 29.3, which it argues is

---

[32] *See* TEX. GOV'T CODE §§ 21.001 ("A court has all powers necessary for the exercise of its jurisdiction . . . including authority to issue the writs and orders necessary or proper in aid of its jurisdiction."), 22.221(a) ("Each court of appeals . . . may issue . . . writs necessary to enforce the jurisdiction of the court."); *see also Dallas Morning News v. Fifth Court of Appeals*, 842 S.W.2d 655, 658 (Tex. 1992) (orig. proceeding) (holding that, to protect its jurisdiction to decide the merits of an appeal involving denial of a Rule 76 motion to seal, the court of appeals had power to issue a temporary order limiting disclosure of disputed documents pending disposition of the appeal); *Madison v. Martinez*, 42 S.W.2d 84, 86 (Tex. Civ. App.—Dallas 1931, writ ref'd) (holding that under Section 22.221(a)'s identically worded predecessor, the court of appeals had authority to protect its jurisdiction over the subject-matter of the appeal by giving effect to a temporary injunction the trial court had denied).

[33] *See Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979) (explaining that a court's inherent powers derive "from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities").

inclusive of the court's statutory and inherent authority to issue temporary orders.[34] HISD maintains that, at a minimum, Section 22.004(i) does not prevent courts from exercising their statutory authority to prevent Commissioner Morath from taking actions that could moot the appeal and divest the court of the jurisdiction he invoked by filing a notice of appeal in the first instance. HISD warns that construing Section 22.004(i) as carrying the prescriptive force Relators advocate would allow governmental defendants to orchestrate a favorable outcome, not on the merits but by evading review entirely—victory achieved by procedural gambit rather than under the law.

Due to Section 22.004(i)'s prohibition against counter-supersedeas under "any other rule," the parties focus on the court of appeals' reliance on Rule 29.3, which governs an appeals court's authority to issue temporary orders preserving the rights of the parties on interlocutory appeal. This rule of appellate procedure states that "[w]hen an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security."[35] HISD contends the court of appeals' broad authority to preserve the parties' rights is materially distinct from a trial court's supersedeas authority, as described in Rule 24.2(a)(3) and as circumscribed by Section 22.004(i). And rather than conflicting, HISD describes supersedeas and the temporary order here as deriving from distinct reservoirs of power that are directed to different concerns, even when they would have the same effect. Relators acknowledge that appellate courts are generally empowered to issue orders protecting the parties' rights and preserving their ability to

---

[34] *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 90 (Tex. 2019) (orig. proceeding) ("[Rule 29.3's] scope plainly extends well beyond the power to protect the court's jurisdiction."). The other arguments HISD made in the court below were not briefed here.

[35] TEX. R. APP. P. 29.3.

11

resolve the dispute on appeal, but they view Section 22.004(i) and Rule 24.2(a)(3) as specific and unqualified constraints on this power, even in aid of a court's jurisdiction.

Both parties find support for their respective arguments in our recent opinion in *In re Geomet Recycling LLC*.[36] That case involved an appellate court's Rule 29.3 temporary order partially lifting a statutory stay of all trial-court proceedings for the limited purpose of allowing the trial court to conduct a hearing on the plaintiffs' request for a temporary injunction and motion for contempt, which asserted Geomet had violated the trial court's temporary restraining order.[37] We held that the language of the interlocutory-appeal statute, Section 51.014(b) of the Civil Practice and Remedies Code, unambiguously stays all trial-court proceedings and admits of no exceptions.[38] As "procedural rules cannot authorize courts to act contrary to a statute," Rule 29.3 did not authorize the court of appeals to lift the stay to allow further proceedings in the trial court, even to the limited extent requested.[39] We explained, however, that plaintiffs had recourse and the possibility of a remedy from the appellate court under Rule 29.3.[40] And because the statutory stay imposed by Section 51.014(b) only applies to trial-court proceedings, the statute did not prohibit the court of appeals from preserving the plaintiffs' rights under Rule 29.3 in other ways.[41] The plaintiffs' error was that they asked the court of appeals to allow the trial court to take an action the interlocutory-appeal statute specifically prohibited.[42]

---

[36] 578 S.W.3d 82 (Tex. 2019).

[37] *Id.* at 85.

[38] *Id.* at 87.

[39] *Id.* at 88.

[40] *Id.* at 89.

[41] *Id.*

[42] *Id.*

12

Relators argue that, similar to *Geomet*, the court of appeals here lacked authority to issue a temporary order under Rule 29.3 that violates a statute, Section 22.004(i). In the Relators' view, the court of appeals' temporary order strikes at the heart of Section 22.004(i)'s protection of a governmental entity's supersedeas right, because the order effectively allows the temporary injunction to be enforced pending disposition of the Relators' appeal.

HISD asserts that the court of appeals' action is entirely consistent with the ruling in *Geomet*. Instead of enforcing the trial court's counter-supersedeas order, which the court of appeals agreed was impermissible, the court issued its own order preserving HISD's rights on the separate basis of preserving the status quo and protecting the court's own jurisdiction,[43] which it is authorized to do not only under a general rule, but also by statute. HISD maintains that the temporary order is not a counter-supersedeas order merely because it has the same effect as an order denying supersedeas. But if Section 22.004(i) were construed as abrogating judicial authority to issue orders protecting the parties and preserving the status quo, HISD argues the statute would violate the Texas Constitution's separation-of-powers mandate, a concern we alluded to in *Geomet*.[44]

This case is quite dissimilar from *Geomet* but it shares the same root question: what does the statute actually prohibit? The precise question we must answer is whether the Legislature intended to restrain the specific process identified in the statute—the supersedeas process controlled by Texas Rule of Appellate Procedure 24—or whether the Legislature intended to constrain any judicial power that could produce the same effect.

---

[43] 609 S.W.3d 569, 578 (Tex. App.—Austin 2020) (per curiam) (granting temporary relief "to effectively perform our judicial function and to preserve the separation of powers").

[44] *In re Geomet*, 578 S.W.3d at 90 (stating that "if parties . . . truly had no way to seek relief from irreparable harm during an interlocutory appeal, we would take very seriously" the plaintiffs' separation-of-powers arguments).

13

**C.**

The polestar of statutory construction is legislative intent, which we determine from the enacted language.[45]  In doing so, we construe the Legislature's chosen words and phrases within the context and framework of the statute as a whole, not in isolation.[46]  We apply the plain meaning of statutory language unless (1) the Legislature has prescribed definitions, (2) the words have acquired a technical or particular meaning, (3) a contrary intention is apparent from the context, or (4) a plain-meaning construction leads to nonsensical or absurd results.[47]  We presume the Legislature knows the law[48] and drafts statutes with care, choosing each word for a purpose and purposefully omitting all other words.[49]  That being the case, we endeavor to afford meaning to all of a statute's language so none is rendered surplusage,[50] but we remain ever mindful of our obligation to avoid constructions that give rise to constitutional infirmities.[51]

Applying these well-established principles, it is clear that Section 22.004(i)'s language evinces the Legislature's intent to restrict the supersedeas process and is silent about appellate-court orders issued under other authority that might have the same effect. Section 22.004(i) provides in its entirety:

> The supreme court shall adopt rules to provide that the right of an appellant under Section 6.001(b)(1), (2), or (3), Civil Practice and Remedies Code, to *supersede* a judgment or order on appeal is not subject to being *counter-superseded* under

---

[45] *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[46] *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017).

[47] *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010); *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008).

[48] *City of Dallas v. Stewart*, 361 S.W.3d 562, 593 n.7 (Tex. 2012).

[49] *In re D.S.*, 602 S.W.3d 504, 514 (Tex. 2020).

[50] *Marks*, 319 S.W.3d at 663.

[51] *City of Fort Worth v. Rylie*, 602 S.W.3d 459, 468 (Tex. 2020).

Rule 24.2(a)(3), Texas Rules of Appellate Procedure, or any other rule. *Counter-supersedeas* shall remain available to parties in a lawsuit concerning a matter that was the basis of a contested case in an administrative enforcement action.[52]

The statute's terms refer specifically to the supersedeas process, as prescribed by Rule 24.

As an initial matter, we note that the Legislature limited the statute to ensuring the rights of appellants under Section 6.001(b)(1)-(3), which generally exempts the state and certain state agents from filing cost and appeal bonds.[53] Under the appellate rules, the trial court determines the amount and sufficiency of an appeal bond in accordance with the requirements outlined in Rule 24, subject to modification only through appellate review of the trial court's supersedeas order.[54]

Further, and more notably, the statute references the right to "supersede" a judgment or order and prohibits the same from being "counter-superseded." At the same time, the statute allows "counter-supersedeas" in a specified circumstance. Supersedeas and counter-supersedeas are terms of art that refer to a particular process for suspending enforcement of a trial court's judgment or order. Neither term refers to appellate-court orders that have the same practical effect.

The statute also references Rule 24.2(a)(3), a specific subsection of the rules governing the supersedeas process. The express citation to Rule 24.2(a)(3) reinforces the Legislature's singular focus on that process. While we cannot ignore the legislative prohibition against counter-supersedeas under "any other rule," that phrase cannot be read in isolation. Construed in connection with the linguistically precedent context, the phrase refers to rules applicable to the

---

[52] TEX. GOV'T CODE § 22.004(i) (emphases added).

[53] TEX. CIV. PRAC. & REM. CODE § 6.001(a), (b).

[54] TEX. R. APP. P. 24.2, .4.

15

supersedeas process.[55]    The court of appeals' temporary order preserving the status quo and

ensuring the court's ability to decide the case on the merits is not a supersedeas order.  The order's

effect does not change its nature.

The distinction between supersedeas and temporary orders suspending enforcement of a

judgment may seem a fine one, but the processes are distinct, and the appellate rules, both currently

and at the time Section 22.004(i) was enacted, make the same distinction.  Rule 29, which applies

to orders on interlocutory appeal, treats the supersedeas process in the trial court under Rule 24

differently from an appellate court's temporary orders.   Rule 29.2 refers to trial court orders

"supersed[ing]" an interlocutory order on appeal, while Rule 29.3 permits an appellate court to

enter temporary orders except one that "suspends the trial court's order if the appellant's rights

would be adequately protected by supersedeas or another order made under Rule 24."[56]

Importantly, Rule 29.1 exempts from the supersedeas process those appellants who are not

required to file an appeal bond, but does not exempt those same appellants from being subject to

an appellate court's temporary orders, a materially different process with materially different

inquiries and objectives.[57]  We presume the Legislature was aware of this distinction in enacting

---

[55] Rule 24.4(a)(4) and (5), which allow an appellate court to review the trial court's "determination whether to permit suspension of enforcement" and "exercise of discretion under Rule 24.3(a)," are "other [counter-supersedeas] rules" Section 22.004(i) constrains.  *See* TEX. R. APP. P. 24.4(a)(4)-(5) (allowing for appellate review of the trial court's supersedeas rulings).

[56] TEX. R. APP. P. 29.3.

[57] The difference in enforcement of the trial court's order, which remains superseded, and enforcement of the court of appeals' temporary order illustrates that the two are neither procedurally nor functionally equivalent.  If the court of appeals had not vacated the trial court's counter-supersedeas order, the temporary injunction would be enforceable by either the trial court or the court of appeals until the conclusion of the appellate process.  *See In re Sheshtawy*, 154 S.W.3d 114, 124-25 (Tex. 2004) (orig. proceeding) (holding that the trial or the appellate court may entertain a contempt motion if a final judgment has not been superseded).  In contrast, the court of appeals' temporary order is enforceable only by that court.  Procedurally speaking, it is not the reinstatement of the trial court's order; rather, it is a new order of the court of appeals.  This is not the type of order the Legislature intended to prohibit in requiring the Court to adopt rules prohibiting denial of supersedeas to certain state actors.

16

Section 22.004(i), and we must give effect to the Legislature's choice to prohibit counter-supersedeas and not all types of orders that might have the same practical effect.

This result derives directly and necessarily from a text-based review of the statutory language. Though applying text as written can sometimes give rise to an outcome that appears punctilious, reading the statute exactly as it is written in this case has the salutary effect of a reasonable result that avoids raising separation-of-powers concerns. The reason the Legislature might take such a nuanced approach would be mere supposition on our part, and it cannot change what the statute says in any event. But one obvious motivation for limiting only the supersedeas process could be concern that a single judge could stymie the state from exercising its lawful powers and from representing the public as it sees fit during the course of an appellate process that might take years to conclude. Such a concern is less acute when a multi-judge panel, subject to mandamus review by this Court, issues temporary relief.

Giving effect to Section 22.004(i)'s plain language, we conclude the statute only prohibits counter-supersedeas orders, which occur within a specific procedural context, and does not apply to orders issued by an appellate court under separate and distinct procedural mechanisms. The dissent reaches the opposite result by isolating the words "any other rule" in Section 22.004(i) to advance a presumed but unarticulated statutory purpose.[58] This runs counter to bedrock statutory construction principles, which require us to discern legislative intent from the statutory language construed as a whole.[59]

---

[58] *Post* at 8.

[59] Similarly, although courts must construe statutes to avoid constitutional infirmities whenever possible, the dissent embraces a categorical bar on appellate court power to prevent irreparable harm without regard to the constitutional ramifications of doing so. *See generally post* at 6-10.

**D.**

We are sensitive to Relators' concerns that protracted litigation without suspension of the temporary injunction could delay remedial measures designed to protect students and improve academic achievement.[60] However, Relators were not without options for hastening conclusion of the litigation on the merits. Relators could have asked the court of appeals for an expedited briefing schedule and ruling,[61] but they elected not to request either. Relators sought expedited disposition of their motion to set aside the trial court's counter-supersedeas order but did not seek expedited disposition of the appeal even after the court of appeals granted temporary relief. To the contrary, they sought, and were granted, a briefing extension. Relators then waited nearly a month to seek mandamus relief from this Court and even then did not request a stay of the court of appeals' temporary order or expedited disposition of the mandamus petition.

Notwithstanding Relators' strategic decision not to seek expedited relief here or in the court below, the dissent chides the court of appeals for granting temporary relief in lieu of sua sponte expediting disposition on the merits.[62] While courts certainly have authority to do so,[63] the

---

[60] Whether remedial measures are warranted is disputed, unadjudicated, and immaterial to the disposition of this procedural dispute as well as the underlying ultra vires action. For dramatic flair, the dissent assumes disputed facts in the Relators' favor, *see post* at 1-3, but even if those facts were an accurate reflection of the record and relevant to the issues in this original proceeding, it would be inappropriate to assume facts contrary to the lower courts' ruling in the procedural posture of this case.

[61] *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 90 (Tex. 2019) (orig. proceeding) ("In addition, Geomet correctly observes that parties in cases subject to the stay can ask the court of appeals for an expedited ruling in what is already an accelerated appeal."); TEX. R. APP. P. 2 ("On a party's motion or on its own initiative an appellate court may—to expedite a decision or for other good cause—suspend a rule's operation in a particular case and order a different procedure[.]"); *see also State of Texas v. El Paso County*, No. 08-20-00226-CV (Tex. App.—El Paso, Nov. 9, 2020) (per curiam) (order granting the State of Texas's motion to expedite the appeal), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=dbeea787-cbd0-4f77-a64f-36900ee097bc&coa=coa 08&DT=Order&MediaID=575e4e4e-4527-4255-aa82-afe0d2d880aa.

[62] *Post* at 12-13.

[63] TEX. R. APP. P. 2 (authorizing an appellate court "on its own initiative . . . to expedite a decision").

18

dissent's argument is confounding because (1) the power to expedite proceedings is irrelevant to whether appellate courts are empowered to issue temporary relief; (2) the availability of an expedited disposition does not change what Section 22.004(i) means; (3) courts have no obligation to expedite the proceedings on their own initiative; and (4) the dissent does not explain how expediting relief would have adequately protected HISD from unreviewable executive action and irremediable harm.

More to the point, Relators had every opportunity and incentive to seek a stay or expedited disposition on their own accord but, for whatever reason, chose not to do so. As the dissent notes, on the same day this original proceeding was filed, Relators' counsel filed a mandamus petition in this Court challenging a Rule 29.3 order in another case involving the State's supersedeas rights and sought an emergency stay of that order, which we granted.[64] In a separate mandamus proceeding involving a different issue filed two days earlier, Relators' counsel requested expedited disposition on the merits, which we also granted.[65] In stark contrast, Relators' counsel did not request either in this case, nor did *this Court* expedite the proceedings on our own initiative. The dissent incorrectly asserts that we sua sponte expedited disposition of one of the aforementioned mandamus petitions,[66] but that is simply untrue. The relators in that case expressly requested expedited disposition.[67] Here, Relators have never done so at any point.

---

[64] Cause No. 20-0401, *In re State of Texas*.

[65] Cause No. 20-0394, *In re State of Texas*.

[66] *Post* at 12.

[67] *Post* at 11-12. The Relators' petition in Cause No. 20-0394, *In re State of Texas*, requested expedited disposition as follows:

> Relator respectfully requests relief within 14 days of this filing. For the July 14 elections, the deadline for early-voting clerks to provide mail-in ballots to military and overseas applicants is May 30. *See* TEX. ELEC.

19

**E.**

The dissent devotes more attention to collateral issues that require no response than it does to the statutory text. Even so, we would be remiss if we did not address the dissent's misrepresentation that the Court "reached a conclusion exactly the opposite of the one it reaches today in another petition for mandamus that, coincidentally, was filed on the very same day."[68] Whether by design or inadvertence, the dissent presents two separate and distinct mandamus proceedings as one, and in doing so, distorts the public record to support a contention that is demonstrably inaccurate. Our construction of Section 22.004(i) and the outcome in this case is in no way inconsistent with our disposition of *In re State of Texas*, Cause No. 20-0394, which presented a statutory-construction issue under the Texas Election Code that we decided on the merits,[69] or our disposition of *In re State of Texas*, Cause No. 20-0401, which involved a procedural issue that we dismissed on the State's motion without reaching the merits.[70] These cases were unrelated to each other with different parties, distinctly different legal issues, and materially different procedural postures.

Cause No. 20-0394, which we will refer to as *State 1*, was a mandamus petition filed in this Court in the first instance. There were no prior proceedings in the lower courts and thus no Rule 29.3, supersedeas, or injunction issues. The only question was the proper construction of the

---

CODE § 86.004(b). Many clerks provide ballots to other applicants at the same time or sooner. *See id.* § 86.004(a). An expeditious decision is needed to prevent irreparable harm.

Petition for Writ of Mandamus at ix.

[68] *Post* at 10.

[69] *See In re State*, 602 S.W.3d 549, 551-52, 560 (Tex. 2020) (orig. proceeding).

[70] *In re State of Texas*, No. 20-0401, (Tex. July 24, 2020), *available at* https://www.txcourts.gov/supreme/orders-opinions/2020/july/july-24-2020/ (order granting unopposed motion to dismiss).

Election Code, and the relators requested expedited disposition of the petition in light of impending run-off elections.[71] None of the issues overlapped with this case.

Cause No. 20-0401, which we will refer to as *State 2*, was a mandamus petition that arose from pending litigation that had been instituted in the trial court and was then on appeal in the Fourteenth Court of Appeals. The underlying case involved the same Election Code issue as *State 1*, but the trial court in *State 2* had issued a temporary injunction that was both prohibitory and prescriptive. The temporary injunction there did not merely maintain the status quo like the temporary injunction and Rule 29.3 order in this case; rather, the temporary injunction ordered the State to undertake certain actions with respect to the elections.

The day after *State 1* was filed in this Court, the court of appeals in *State 2* issued a Rule 29.3 order maintaining the trial court's injunction pending disposition of the appeal.[72] In the *State 2* mandamus petition filed here the following day—the same day this original proceeding was filed—the appellate court's authority to continue the injunction under Rule 29.3 was the only issue. We granted the State's motion for temporary relief in *State 2*, but we never reached the merits of the mandamus petition because our opinion on the Election Code issue in *State 1* resolved the merits of the underlying dispute in *State 2*. As a result, the *State 2* litigation was nonsuited in the trial court; the court of appeals dismissed the underlying appeal as moot; and we granted the State's unopposed motion to dismiss the mandamus petition.

As the dissenting justice is fully aware, neither *State 1* nor *State 2* decided the merits of any issue presented in this case. Nor have Relators asked the Court for temporary relief, as the

---

[71] *See supra* n.66.

[72] No. 14-20-00358-CV, 2020 WL 3022949 (Tex. App.—Houston [14th] May 14, 2020, no pet.).

relators in *State 2* did.  It is thus impossible for any inconsistency to exist between this case and those cases, let alone any "opposite" conclusions.

### III. Conclusion

We deny Relators' request for mandamus relief because Section 22.004(i)'s prohibition on counter-supersedeas refers to a particular procedural process, not an appellate court's temporary orders under other authority.  Accordingly, the court of appeals was not without power to issue temporary relief.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** March 19, 2021

22